UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NEUNG KI LEE,

                         Plaintiff,

            -against-

MANI & PEDI INC., and KUMWOO PARK,

                         Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**

20 Civ. 10787 (JCM)

　　　Plaintiff Neung Ki Lee ("Plaintiff") commenced this action against Defendants Mani &

Pedi Inc. and Kumwoo Park ("Defendants"), seeking damages for wage-and-hour violations

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, New York Labor Law

("NYLL") §§ 195, 650 *et seq.*, and N.Y. Comp. Codes R. & Regs. tit. 12, § 142.2.2. (Docket No.

1).  The action proceeded to a jury trial before the undersigned,[1] at which the jury rendered a

verdict finding Defendants liable for unpaid overtime wages.  Following trial, based on the jury's

findings, the parties filed a joint proposed calculation of damages amounting to $24,758.66,

which the Court accepted in a final judgment. (Docket No. 41).

　　　Before the Court is Plaintiff's motion for attorneys' fees and costs, accompanied by a

memorandum of law and exhibits. (Docket No. 43).  Defendants opposed Plaintiff's motion,

(Docket No. 45), accompanied by a supporting declaration and exhibits, (Docket Nos. 44–44-3),

and Plaintiff replied, (Docket No. 46).  For the reasons set forth herein, Plaintiff's motion is

granted in part and denied in part, and Plaintiff's counsel is awarded a total of $29,680.50 in

attorneys' fees, and $1,957.40 in costs.

---

[1] This action is before the Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c).
(Docket No. 15).

## I.  BACKGROUND

Plaintiff retained the Song Law Firm LLC ("Plaintiff's counsel") to litigate this action against Defendants, her former employers, on October 29, 2020.[2] (Docket No. 43 at 21; *see also* Docket No. 1 ¶ 8).  After sending a demand letter that went unanswered, (Docket No. 43 at 24-25), on December 21, 2020, Plaintiff's counsel filed a complaint in the Southern District of New York seeking a total of $68,535.64 for unpaid overtime wages, liquidated damages and pay stub as well as pay rate violations under the FLSA and NYLL ("Complaint"), (Docket No. 1 ¶¶ 55, 69, 77, 83).  Defendants answered the Complaint on January 11, 2021, and the parties consented to the undersigned on January 25, 2021. (Docket Nos. 11; 15).

The parties completed minimal discovery by June 30, 2021, which included the exchange of documents and interrogatories, as well as two depositions. (Docket Nos. 43 at 29-30; 44 ¶ 4). The parties required no extensions or motion practice to resolve discovery disputes.  Neither party retained an expert.  During this process, Plaintiff's counsel discovered that Defendants had previously been sued for similar wage-and-hour violations before the New York Department of Labor ("NYDOL"), which had resulted in a settlement. (Docket No. 43 at 7; *cf.* Docket No. 25 ¶¶ 2-4).  Defendants did not file any dispositive motions.

The parties pursued mediation in the summer of 2021, at Defendants' request. (Docket No. 46 at 4; *see also* Docket Nos. 21-22).  In advance of the mediation, Defendants transmitted a mediation statement ("Mediation Statement") to Plaintiff's counsel setting forth certain issues Defendants believed required resolution in order to make settlement possible. (Docket No. 44-2). One such issue was the appropriate method of calculating Plaintiff's pay rate, and thus, the amount of overtime pay owed, under the FLSA and NYLL.  According to the Mediation

---

[2] Plaintiff's retainer agreement contained a contingency clause providing that Plaintiff would pay Plaintiff's counsel "1/3 of Any Recovered Amount." (Docket No. 43 at 17).

Statement, Plaintiff's method incorrectly assumed that she was hired to work only 40 hours per week, when in reality, her weekly work schedule required over 40 hours of work. (*Id.* at 2-3). Defendants submitted that under this scenario, the proper calculation method under 29 C.F.R. 778.114 involved dividing Plaintiff's total weekly salary by the amount of hours she worked per week. (*Id.* at 3). Based on this method, as well as Defendants' records showing that Plaintiff did not always work a five-day week for various reasons, Defendants submitted that if anything, Plaintiff was owed under $6,000 of unpaid overtime—as opposed to the $29,267.82 sought in the Complaint. (*Id.* at 3-4; *see also* Docket No. 1 ¶ 69). The Mediation Statement further asserted that "the chance of successful mediation [wa]s almost nil" if Plaintiff refused to change her position regarding these two issues. (Docket No. 44-2 at 4). Although Plaintiff disagreed with Defendants' argument, the parties moved forward with mediation, which was unsuccessful. (Docket Nos. 22; 44 ¶ 5; 45 at 5; 46 at 4-5).

After a case management conference on September 13, 2021, the Court issued a Trial Order scheduling trial for February 14, 2022, and setting forth various deadlines for the filing of pretrial papers. (Docket No. 23). In addition to proposed *voir dire* questions and jury instructions, (Docket Nos. 27-28), Defendants timely filed a motion *in limine* to preclude evidence regarding the NYDOL lawsuit that was revealed in discovery, (Docket Nos. 24-26), which Plaintiff opposed,[3] (Docket No. 33). On December 6, 2021—the deadline for the filing of proposed *voir dire* questions and jury instructions, as well as the Joint Pretrial Order—Plaintiff's counsel requested a four-week extension to January 3, 2022.[4] (Docket No. 30). The Court

---

[3] Several weeks before filing their motion *in limine*, Defendants offered to stipulate to the issues of notice and knowledge of the applicable wage-and-hour laws if Plaintiff would agree not to introduce evidence of the NYDOL action. (Docket Nos. 44 ¶ 6; 46 at 4). Other than acknowledging receipt, Plaintiff's counsel did not respond to this offer. (Docket Nos. 25 at 2 n.1; 44 ¶ 6).

[4] Counsel explained that Joshua S. Lee, Esq. ("Mr. Lee"), one of Plaintiff's attorneys, could not meet the current deadline due to a concurrent trial in another matter. (Docket No. 30).

granted the extension with respect to the Joint Pretrial Order, but ordered that Plaintiff file her proposed *voir dire* questions and jury instructions by December 22, 2021. (Docket No. 31).  On January 14, 2022, the Court issued another order observing that none of these documents had been filed to date, and directing the parties to submit them by January 19, 2022. (Docket No. 35). The parties filed the Joint Pretrial Order that same day, (Docket No. 36), but Plaintiff never submitted proposed *voir dire* questions or jury instructions.

At the Final Pretrial Conference on February 1, 2022, the Court issued a bench ruling granting Defendants' motion *in limine*.  When asked why they had not the filed proposed *voir dire* questions or jury instructions as the Court instructed, Plaintiff's counsel claimed to be unaware of the deadlines despite ECF notifications of the Court's prior Orders.  The Court noted that without such proposed jury instructions, it could not ascertain Plaintiff's position regarding the appropriate standards for calculating her regular rate of pay and any overtime owed.[5]  In response, and again at a follow-up conference on February 10, 2022, Plaintiff's counsel asserted that Plaintiff was paid by the hour, and requested jury instructions regarding the calculation of overtime based on an hourly rate of pay.  The parties stipulated that Plaintiff was paid by the hour at the February 10 conference, explaining that their only disputes with respect to her regular rate of pay were the amount she was paid and the dates her rate increased.  They also stipulated that in the event the jury found Defendants liable for failing to pay overtime, Plaintiff would be entitled to liquidated damages for this violation, as well as statutory damages for the notice of pay rate and pay stub violations. (*Cf.* Docket No. 1 ¶¶ 55, 69, 77, 83).

---

[5] While Plaintiff asserted that she was paid $16.25 per hour, followed by $17.50 per hour and $18.75 per hour in the Joint Pretrial Order, she provided no legal authority or analysis supporting these rates in light of the facts of the case. (Docket No. 36 at 3).

The case proceeded to a jury trial on February 14 and 15, 2022. Despite the parties' previous stipulation that Plaintiff was paid by the hour, witnesses from both sides testified that Plaintiff was paid a flat sum for each day she worked. Accordingly, at the close of the evidence, the Court instructed the jury regarding the calculation of overtime pay based on both a day rate and hourly rate.[6] The Court also required the jury to complete a verdict form with special interrogatories asking, *inter alia*, in the event the jury found that Defendants owed Plaintiff overtime pay, whether Plaintiff was paid an hourly rate or day rate. (Docket No. 39 at 3). On February 15, 2022, the jury rendered a verdict finding that Defendants had failed to pay Plaintiff overtime, and that Plaintiff was paid a day rate, not an hourly rate. (*Id.* at 3). On March 2, 2022, based on the jury's findings, the parties jointly proposed a damages calculation comprising of $7,379.33 in unpaid overtime; $7,379.33 in liquidated damages; and $10,000.00 in statutory damages for the notice of pay rate and pay stub violations. (Docket No. 40). The Court accepted these amounts in a judgment entered against Defendants on March 3, 2022. (Docket No. 41).

## II. DISCUSSION

The FLSA and NYLL provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action. *See* 29 U.S.C. § 216(b); NYLL § 198(1-a). "District courts have broad discretion when awarding a fee, but must clearly explain the reasons supporting an award." *Ortega v. JR Primos 2 Rest. Corp.*, 15 Civ. 9183 (JCF), 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017). "Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively." *Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219, 240 (S.D.N.Y. 2020), *report and recommendation adopted sub*

---

[6] The Court memorialized its authority to issue these instructions despite the parties' prior stipulation in a bench ruling on February 15, 2022.

*nom. Villanueva v. 179 Third Ave. Rest. Inc.*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021)

(quoting *Tackie v. Keff Enters. LLC*, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y.

Sept. 16, 2014)) (internal quotations omitted).  In assessing the reasonableness of attorneys' fees,

the court must: "(1) determine the reasonable hourly rate; (2) determine the number of hours

reasonably expended; (3) multiply the reasonable hourly rate by the number of hours reasonably

expended to determine the presumptively reasonable fee; and (4) make an appropriate adjustment

to arrive at the final fee award." *Creighton v. Dominican Coll.*, No. C09-3983Z, 2011 WL

4914724, at *6 (S.D.N.Y. Aug. 16, 2011).  However, "[t]here is no precise rule or formula for

making these determinations. . . . The court necessarily has discretion in making this equitable

judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983).

By this motion, Plaintiff seeks to recover $39,087.50 in attorneys' fees and $1,957.40 in

costs. (Docket No. 43 at 35).  Defendants challenge the fees sought.  Defendants argue that (1)

the fees should be reduced due to (a) duplicative billing; (b) overbilling; and (c) improper

charges for "purely ministerial tasks," (Docket No. 45 at 6-8); (2) the Court should eliminate

counsel's fees for the mediation and opposing Defendants' motion *in limine*, (*id.* at 8-10); and

(3) the Court should not award more than 33% of Plaintiff's actual recovery in light of the

contingency arrangement in Plaintiff's retainer agreement, (*id.* at 6, 10-14).

## A.  Reasonable Hourly Rate

Plaintiff's counsel requests that the Court apply the following hourly rates for the work

they performed:

| Name | Position | Years of Experience | Requested Hourly Rate |
|------|----------|---------------------|-----------------------|
| Errol C. Deans | Senior Associate | 24 | $375.00 |
| Joshua S. Lee | Senior Associate | 9 | $375.00 |

| PI[7] | Law Clerk | Unknown | $175.00 |
|---|---|---|---|

(*See* Docket No. 43 at 17, 25, 36-37 ¶¶ 2, 4, 9).

A court evaluating a request for attorneys' fees must base its award on a "reasonable hourly rate," *i.e.*, "the rate a paying client would be willing to pay," bearing in mind that a client "wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 184, 190 (2d Cir. 2008); *see also Callari v. Blackman Plumbing Supply, Inc.*, No. CV 11-3655 (ADS) (AKT), 2020 WL 2771008, at *8 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  A reasonable hourly rate is one "in line with . . . prevailing [rates]" in the district where the court sits "for similar services by lawyers of reasonably comparable skill, expertise and reputation." *See McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)) (internal quotations omitted).  In setting a reasonable hourly rate, "the Court should consider, *inter alia*, the '*Johnson* factors' enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989)."[8] *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 475 (S.D.N.Y. 2009) (citing *Arbor Hill*, 522 F.3d at 187).  In determining what a

---

[7] Plaintiff's counsel did not provide the name of their law clerk, but his or her initials are listed as the third timekeeper in their billing records. (*See* Docket No. 43 at 17, 25).

[8] The *Johnson* factors, as set forth by the Fifth Circuit, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *See* 488 F.2d at 717–19; *see also Arbor Hill*, 522 F.3d at 186 n.3.

reasonable client would be willing to pay, the Second Circuit in *Arbor Hill* specifically instructs a court to:

> [C]onsider factors including, but not limited to the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

522 F.3d at 184.

Plaintiff asserts that her counsel should each be compensated at a rate of $375.00 per hour.  Mr. Deans, a Senior Associate, has over twenty years of experience in civil litigation and employment law. (Docket No. 43 at 17, 36 ¶¶ 4-6).  He previously worked in the New York offices of Skadden, Arps, Slate, Meagher & Flom LLP and King & Spalding LLP. (*Id.* at 36 ¶ 6). Mr. Lee, also a Senior Associate, has nine years of experience in litigation and employment law as well as other areas. (*Id.* at 11, 17, 36 ¶¶ 2-3).  Mr. Lee graduated *cum laude* from Michigan State College of Law, and is fluent in Korean. (Docket Nos. 43 at 11; 46 at 5).  Both attorneys have worked on "hundreds" of cases in civil litigation and employment law. (Docket No. 43 at 36 ¶¶ 3, 5).

Although Defendants do not challenge Plaintiff's counsel's rates, the Court, in its discretion, reviews their appropriateness and makes the following adjustments. *See Sanchez v. I&A Rest. Corp.*, 14cv0726 (DF), 2017 WL 2537814, at *4 (S.D.N.Y. May 22, 2017) (citing *Hensley*, 461 U.S. at 437).  Plaintiff is correct that generally, courts within the Southern District of New York award fees for rates between $250.00 and $450.00 per hour in FLSA cases,

deeming the upper range appropriate for the most experienced FLSA litigators. *See, e.g.*, *Carrera v. DT Hosp. Grp.*, 19-CV-4235 (RA) (KHP), 2021 WL 6298656, at *12–13 (S.D.N.Y. Nov. 1, 2021), *report and recommendation adopted*, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021); *Villanueva*, 500 F. Supp. 3d at 241; *Bisono v. TDL Restoration, Inc.*, 17 Civ. 9431 (JCM), 2019 WL 4733599, at *2 (S.D.N.Y. Sept. 27, 2019).  However, Plaintiff overlooks that her counsel are billed as Senior Associates, not partners. *See Meide Zhang v. Liang Zhang*, CIVIL ACTION NO. 16 Civ. 4013 (LGS) (SLC), 2020 WL 9256464, at *6 (S.D.N.Y. Dec. 21, 2020), *report and recommendation adopted as modified sub nom. Zhang v. Zhang*, 2021 WL 1154084 (S.D.N.Y. Mar. 26, 2021) ("Medina was a senior associate at a small law firm, not a partner, and therefore his rate should be lower than that of [a partner]."); *Hernandez v. JRPAC Inc.*, 14 Civ. 4176 (PAE), 2017 WL 66325, at *3 (S.D.N.Y. Jan. 6, 2017) ("[E]xperienced *partners* working on wage-and-hour cases bill in the range of $300 to $400 per hour.") (emphasis in original); *Apolinario v. Luis Angie Deli Grocery Inc.*, No. 1:14-cv-2328-GHW, 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015) (distinguishing between reasonable rates for partners and senior associates "with at least eight years of experience").

Senior "[a]ssociates with at least eight years of experience . . . generally command rates of between $285 and $350 per hour." *Zhang*, 2020 WL 9256464, at *6 (quoting *Siegel v. Bloomberg L.P.*, 13cv1351 (DF), 2016 WL 1211849, at *6 (S.D.N.Y. Mar. 22, 2016)) (internal quotations omitted); *see also Maldonado v. Papadopoulos*, 20-cv-6850 (LGS) (KHP), 2021 WL 5363016, at *11 (S.D.N.Y. July 17, 2021), *report and recommendation adopted as modified*, 2021 WL 4596535 (S.D.N.Y. Oct. 6, 2021) (approving $350.00 hourly rate for senior associate with eight years of experience at small labor and employment law firms); *Solano v. Andiamo Cafe Corp.*, 1:19-CV-03264 (SN), 2021 WL 2201372, at *2 (S.D.N.Y. June 1, 2021) (noting that

$300.00 per hour for senior associates was typically deemed reasonable "more than five years ago," such that $325.00 per hour was also reasonable); *Hernandez*, 2017 WL 66325, at *3 (noting that "the case law has approved rates of $300 an hour for [associates] with eight or more years' experience").  Thus, the requested rate for Mr. Deans and Mr. Lee falls above this threshold and at the upper range for experienced FLSA litigators in general.

It is inappropriate to award Mr. Deans more than $350.00 per hour because, while he has more experience than a typical senior associate and acted as lead counsel, he is *not* a partner. Moreover, as discussed *infra*, Mr. Deans pursued questionable litigation decisions, failed to follow Court orders, and submitted substandard papers that were of little assistance to the Court in resolving the disputed issues in this case. *See infra* Section II.B.4.  These concerns undermine Mr. Deans' "skill" and "expertise" as compared to litigators awarded the high end of the range of fees Plaintiff represents as typical in this District. *See McDonald*, 450 F.3d at 96; *see, e.g.*, *Ge Chun Wen v. Hair Party 24 Hours Inc.*, No. 15cv10186 (ER) (DF), 2021 WL 3375615, at *22 (S.D.N.Y. May 17, 2021), *report and recommendation adopted sub nom. Wen v. Hair Party 24 Hours Inc.*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021) (reducing rate for lead counsel due to the "poor quality of work that was reflected in many of [the firm's] filings," including "careless assertions" and "inconsistencies"); *McGlynn v. Cools, Inc.*, 19cv03520 (GBD) (DF), 2020 WL 6561658, at *10 (S.D.N.Y. July 1, 2020), *report and recommendation adopted*, 2020 WL 5525745 (S.D.N.Y. Sept. 15, 2020) (reducing rate in light of counsel's "factual assertions as to which he appeared to not have personal knowledge," lacking submissions and violations of the court's rules).  In particular, Mr. Deans' work is distinguishable from that in *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012), relied on by Plaintiff, (Docket No. 43 at 11), which awarded $450.00 per hour in an FLSA case to a partner at a "large, well-respected

law firm" with over thirty years of experience. *See* 851 F. Supp. 2d at 597. The quality of Mr.

Deans' work, combined with the fact that he simply has not achieved the status appropriate for

awarding "a rate at the top end of th[e] [partner] range" cited above, warrants a reduction to

$350.00 per hour. *See Chun Wen*, 2021 WL 3375615, at *20.

Mr. Lee's requested rate is also unwarranted in light of his more limited experience and

expertise.  Mr. Lee has under a decade of experience and throughout his career, has focused on

unspecified "other subject areas" in addition to civil litigation and employment law. (Docket No.

43 at 11, 36 ¶ 2).  Plaintiff does not specify how long Mr. Lee has litigated cases such as this

one, versus how long he worked in these other "areas." (*Id.* at 11).  "As the fee applicant,

[P]laintiff[] bear[s] the burden of documenting . . . the reasonableness of the hourly rates

claimed." *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (quoting

*General Elec. Co. v. Compagnie Euralair, S.A.*, No. 96 CIV. 0884 (SAS), 1997 WL 397627, at

*4 (S.D.N.Y. July 3, 1997)) (internal quotations omitted).  Thus, while Mr. Lee played an

important role in this case by communicating with the client in her native language, a lesser

amount is appropriate because Mr. Lee's nine years of experience do not exclusively encapsulate

labor and employment litigation. *See, e.g.*, *Arroyo v. J & M Realty Servs. Corp.*, No. 21 Civ.

3611 (PAE) (JLC), 2022 WL 595936, at *2 (S.D.N.Y. Feb. 28, 2022) (reducing $350.00 hourly

rate to $250.00 for senior associate who spent seven out of his nine years of practice working in

"other areas" besides FLSA litigation); *Salazar v. 203 Lena Inc.*, 16-CV-7743 (VB) (JLC), 2020

WL 5627118, at *12 (S.D.N.Y. Sept. 18, 2020), *report and recommendation adopted*, 2020 WL

6257158 (S.D.N.Y. Oct. 23, 2020) (reducing $400.00 hourly rate to $300.00 for attorney who

had five to eight years of experience while working at plaintiff's firm and relevant language

skills); *Sanchez v. DPC New York Inc.*, 381 F. Supp. 3d 245, 252 (S.D.N.Y. 2019) ("Hershan

primarily practiced in the area of criminal defense before joining the [plaintiff's firm] . . . . Thus, the Court finds that Hershan's hourly rate should be . . . $200."). Accordingly, the Court finds an hourly rate of $300.00 reasonable for Mr. Lee. *See Salazar*, 2020 WL 5627118, at *12.

Plaintiff also seeks reimbursement for the work of a law clerk with the initials "PI" who bills at $175.00 per hour. (Docket No. 43 at 17, 37 ¶ 9); *see supra* n.7. Counsel provides no information regarding this employee's background or the nature of his or her position. As a result, the Court cannot determine whether PI is a recent law school graduate awaiting admission to the Bar, or a member of counsel's support staff.[9] Where, as here, "the moving party fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested." *See Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, Nos. 03 Civ. 4148(WHP), 04 Civ. 5732(WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2002) (quoting *Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC.*, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008)) (internal quotations omitted); *see also Duchitanga v. 43 Ave Top N' Quality Corp.*, 17-CV-1145-LDH-RLM, 2021 WL 7906539, at *20 (E.D.N.Y. Sept. 13, 2021) (lowering rate due to "little information . . . concerning . . . individuals' qualifications and background[s] apart from the title of 'law clerk'"); *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458(GEL), 2009 WL 2482134, at *5 (S.D.N.Y. Aug. 13, 2009) (decreasing paralegals' and law clerks' rates from $175.00 per hour to $80.00 per hour in light of lack of information about their backgrounds). In addition, $175.00 per hour is higher than the typical range of reasonable rates for law clerks and legal support staff. *See Alonso v. New Day Top Trading, Inc.*, 18cv4745 (PAE) (DF), 2020 WL 9815184, at *23 (S.D.N.Y. June 29, 2020), *report and recommendation adopted*, 2021 WL 4691320 (S.D.N.Y. Oct. 7, 2021)

---

[9] There does not appear to be an attorney with the initials "PI" on Plaintiff's counsel's website. *See Our Attorneys*, Song Law Firm, https://songlawfirm.com/contents/ourattorneys (last visited August 24, 2022).

(reducing law clerk and paralegal rates from $250.00 to $100.00 per hour); *Manley v. Midan Rest. Inc.*, 14 Civ. 1693 (HBP), 2017 WL 1155916, at *12 (S.D.N.Y. Mar. 27, 2017) (noting that range "between $120 and $150" per hour was reasonable); *Ni v. Bat-Yam Food Servs. Inc.*, 1:13-cv-07274 (ALC) (JCF), 2016 WL 369681, at *7 (S.D.N.Y. Jan. 27, 2016) (finding that $120.00 hourly rate for summer paralegals and law clerks was reasonable). The Court accordingly finds that a rate of $100.00 per hour is reasonable for PI's work. *See Manley*, 2017 WL 1155916, at *12; *Imbeault*, 2009 WL 2482134, at *5.

## B. Reasonable Hours Expended

"The party seeking attorneys' fees bears the burden of demonstrating that the claimed . . . number of hours [is] reasonable," and the "amount of time expended" is "adequately supported by contemporaneous time records specifying relevant dates, time spent, and work done." *Creighton*, 2011 WL 4914724, at *6 (quoting *Pascuiti v. New York Yankees*, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000) (internal quotations omitted). "Adjustments must be made to the number of hours expended based on case-specific factors, including deductions for 'excessive, redundant, or otherwise unnecessary hours.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

Here, Plaintiff submitted contemporaneous time records, (Docket No. 43 at 24-35), seeking payment for approximately 106.90 hours of work, (*id.* at 37 ¶ 9).[10] Defendants contend that this amount of time is unreasonable because (a) it includes both Mr. Deans' and Mr. Lee's time appearing at the mediation and at trial, which was redundant; (b) the time billed for depositions exceeds the amount of time such depositions lasted; and (c) Mr. Deans' time entries of .1 hour for "purely ministerial tasks" such as reviewing docket notifications are not

---

[10] Counsel's declaration in support of its motion erroneously lists the total hours worked as 102 instead of 106.90. (*Compare* Docket No. 43 at 35, *with id.* at 37 ¶ 9).

compensable. (Docket No. 45 at 6-8).  Defendants further contend that counsel is not entitled to

any fees for the mediation or opposing Defendants' motion *in limine* because counsel refused to

negotiate regarding certain issues and spent an inordinate amount of time drafting their

opposition brief. (*Id.* at 8-10).  Plaintiff responds that (a) Mr. Lee's presence at the above

proceedings was essential in light of his ability to communicate with the client in Korean; (b) the

rest of the time billed was necessary to effectively litigate the action; (c) counsel had no

obligation to negotiate with Defendants or accept the compromises they proposed; (d) counsel

was ethically required to oppose Defendants' motion *in limine*; and (e) the amount of time they

spent thereon is "immaterial." (Docket No. 46 at 4-8).

     While the Court appreciates the need for zealous advocacy and the policy rationales for

fee-shifting in wage-and-hour cases, *see generally Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d

5, 10–11 (S.D.N.Y. 2015), the Court finds that Plaintiff's counsel's fees must be reduced in light

of excessive, redundant or otherwise unnecessary hours for the reasons stated below, *see

Creighton*, 2011 WL 4914724, at *6.

## 1.  Duplicative Billing

     With respect to the alleged redundancies resulting from Mr. Lee and Mr. Deans'

appearances at the mediation and at trial, Plaintiff's argument that Mr. Lee facilitated

communication with the client is well-taken.  However, it is not reasonable to shift the expense

of such services to Defendants.  Rather than engaging two attorneys for this case, a typical

"paying client would seek counsel from a lawyer with whom [s]he could communicate directly

or with the assistance of a translator." *See Ortiz v. City of New York*, 15cv2206(DLC), 2020 WL

755878, at *7 (S.D.N.Y. Feb. 14, 2020), *aff'd in part*, *rev'd in part and remanded on other

grounds*, 843 F. App'x 355 (2d Cir. 2021) (reducing fees in "run-of-the-mill § 1983 action"

where plaintiff retained a second firm "for the limited purpose of employing a Spanish speaker");

*see also Queenie, Ltd. v. Nygard Int'l*, 204 F. Supp. 2d 601, 608 (S.D.N.Y. 2002) (reducing fees where prevailing party "use[d] a lawyer already employed by [its] counsel who was fluent in Korean rather than a less expensive Korean translator").  Indeed, "[t]ranslation . . . is not legal work," and thus, is not compensable as attorney time. *See Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667(PAE), 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015); *see also Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 595 (S.D.N.Y. 2015).  Absent any other justification for Mr. Lee's presence at these proceedings, and in light of the fact that he did not speak or examine witnesses at trial, full reimbursement for his services is unwarranted. *See Mendoza v. City of Rome*, 162 F.R.D. 260, 264 (N.D.N.Y. 1995) (reducing hours because it was unnecessary for two attorneys to attend pretrial examinations and the trial).

  While it may have been reasonable to pay for a translator or paralegal with Korean language skills to communicate with the client effectively, *cf. Garcia-Severino v. TDL Restoration*, Inc., 18-CV-11401 (CS), 2020 WL 7239678, at *3 (S.D.N.Y. Dec. 9, 2020), Plaintiff did not do so.  Plaintiff was in her rights to make that choice, but the Court will not "impose" this needless expense on Defendants. *See Queenie*, 204 F. Supp. at 608 ("While a party to a litigation may choose its own level of litigation expense, it may not impose its own approach on a losing adversary.").  The Court also notes that the time records show numerous other instances of duplicative work and consultation between Mr. Deans and Mr. Lee, (*e.g.*, Docket No. 43 at 24-26, 28, 30, 32-34), even though this single-plaintiff, single-issue FLSA case had limited discovery, and thus, reasonably required only one lawyer. *See Ortiz*, 2020 WL 755878, at *7 (noting that "paying client" would not "support . . . expenditure[s]" on duplicative work and internal conferences on overstaffed case); *see also Wei Yan Yan v. 520 Asian Rest. Corp.*, No. 13-CV-2417 (KNF), 2015 WL 1026611, at *10 (S.D.N.Y. Mar. 9, 2015) (finding work done by

partner and senior attorney "duplicative" in "simple" FLSA case with "limited . . . discovery").

All of these considerations militate toward a reduction, too. *See Wei Yan Yan*, 2015 WL

1026611, at *10.

## 2. Ministerial Tasks

Defendants request a further reduction for certain entries reflecting .1 hours of work for

what Defendants call "purely ministerial tasks."[11] (Docket No. 45 at 8).  These include Mr.

Deans' review of short, non-substantive docket notifications of, among other things, the

designation of the undersigned as the assigned Magistrate Judge; the reassignment of the case

from the Honorable Laura Taylor Swain to the Honorable Vincent L. Briccetti; and the filing of

counsel's own civil cover sheet. (*Id.*; *see also* Docket Nos. 7; 43 at 25-26).  As Defendants note,

while each of these entries may seem innocuous on its own, the aggregate adds up to over two

hours of work. (Docket No. 45 at 8); *see supra* n.11.

Courts are loathe to award fees for time spent on the review and receipt of

straightforward docket notifications, especially when such time is expended by high billers like

Mr. Deans. *See, e.g.*, *H.W. v. New York City Dep't of Educ.*, No. 20-CV-10591 (RA), 2022 WL

541347, at *4 (S.D.N.Y. Feb. 23, 2022) (finding that entries for "the review of ECF

notifications" were unreasonable and such administrative tasks "generally not compensable");

*Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-3828 (WFK) (RER), 2021 WL 1845057, at *12

(E.D.N.Y. Mar. 5, 2021), *report and recommendation adopted*, 2021 WL 1259623 (E.D.N.Y.

Apr. 6, 2021) (questioning whether .1-hour entries for reviewing "ECF bounce[s]" "accurately

---

[11] While Defendants argue that the time records contain forty-four such entries, (Docket No. 45 at 8), the Court has only identified nineteen, some of which reflect .2 hours of work, (*e.g.*, Docket No. 43 at 25) (noting .2 hours for Mr. Deans' "[r]eview of court order re: magistrate").  Mr. Deans made all but one of these entries; PI also billed .2 hours on March 10, 2022 for "review[ing] [the] court's memo and put[ting] deadlines for motion on calendar." (*Id.* at 25-31, 34).

represent[ed] the time spent on the task"); *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916 (LAP)(DF), 2013 WL 795649, at *9 (S.D.N.Y. Jan. 30, 2013), *report and recommendation adopted*, 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013) (deducting partner's .1-hour entries for reviewing ECF notifications such as notices of appearance); *Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 637 (S.D.N.Y. 2012) (deducting all time for which "the highest billing lawyer . . . billed for reviewing ECF entries"). The simple tasks listed in the subject entries should have required "mere seconds of" reading no more than a few lines of text. *See Barile*, 2013 WL 795649, at *9. These "administerial tasks . . . should not [have] be[en] billed at [Mr. Deans'] rates" and are not compensable in the first place. *See Lopez*, 2021 WL 1845057, at *12; *see also H.W.*, 2022 WL 541347, at *4. Consequently, a reduction is also warranted on this basis.[12]

### 3.  Excessive Billing

Defendants also allege that Plaintiff's counsel overbilled for (a) Mr. Deans' taking of depositions; and (b) Mr. Deans' drafting of their opposition brief to Defendants' motion *in limine*. (Docket No. 45 at 8-9). With respect to the depositions, Defendants allege that although Mr. Deans billed 2.3 hours for the two depositions taken, (Docket No. 43 at 30), according to the transcripts, the depositions took only fifty-five minutes and thirty-one minutes, with a three minute break between them, (Docket No. 44-1 at 2-3). As for the opposition brief, Defendants maintain that reimbursement for Mr. Deans' three hours of drafting is unreasonable because it was "less than two pages and cited only one case[,] . . . which did not support [P]laintiff's position." (Docket No. 45 at 9). Plaintiff responds that the deposition issue is "frivolous" and in

---

[12] Relatedly, the Court notes that PI billed a full hour for the simple administrative task of filing the Complaint. (Docket No. 43 at 25). While counsel exercised good judgment in delegating this task to the team member with the lowest rate, it was unreasonable for PI to expend so much time uploading a document to the docket. *See Jianmin Jin v. Shanghai Original, Inc.*, 16-cv-5633 (ARR) (JO), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020).

any event, "travel time or other such considerations for time" account for the difference noted by
Defendants. (Docket No. 46 at 5).

### i. Travel Time to Depositions

Fee awards "ordinarily" "include . . . reasonable out-of-pocket expenses that are charged
to clients . . . , such as . . . travel." *U.S. ex rel. Karlin v. Noble Jewelry Holdings Ltd.*, No. 08 Civ.
7826(JGK)(KNF), 2012 WL 1228199, at *4 (S.D.N.Y. Apr. 9, 2012) (citing *LeBlanc–Sternberg
v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).  Therefore, to the extent the extra time on
counsel's billing entry reflects Mr. Deans' travel to the depositions, this expense is "not
automatically excluded." *See New York Youth Club v. Town of Harrison*, 12-CV-7534 (CS),
2016 WL 3676690, at *7 (S.D.N.Y. July 6, 2016).  However, if the subject entry does cover
travel time, it is essentially block billed, which, as explained below, is generally frowned upon in
this Circuit. *See infra* Section II.B.5.  Moreover, "it is not appropriate to lump travel time
together with fully compensable time" because courts typically award only half of counsel's
reasonable rate for travel time. *See Robinson v. City of New York*, No. 05 Civ. 9545(GEL), 2009
WL 3109846, at *6 (S.D.N.Y. Sept. 29, 2009) (reducing compensable hours for block-billed
entry for travel and taking a deposition); *see also In re Visa Check/MasterMoney Antitrust Litig.*,
MASTER FILE NO. CV-96-5238, 2004 WL 7333014, at *11 (E.D.N.Y. Apr. 27, 2004),
*subsequently aff'd sub nom. Wal-Mart Stores, Inc. v. Buholzer*, 156 F. App'x 346 (2d Cir. 2005)
("Mr. Davis should be compensated at half of his hourly rate for his travel time.").  That said,
only a modest reduction is warranted because this impropriety only affects one time entry.
(Docket No. 43 at 30).

### ii. Time Spent Drafting Opposition

With respect to Plaintiff's opposition brief, Defendants are correct that this less-than-two-
page document (with about one page of argument) likely did not warrant three hours of work

from Mr. Deans for this single-plaintiff action seeking relatively modest recovery. (Docket No. 45 at 8-9).  The brief relies on two Federal Rules of Evidence and *dicta* in one case, *Hart v. RCI Hospitality Holdings, Inc*., 90 F. Supp. 3d 250, 286 (S.D.N.Y. 2015), whose conclusion contradicts the position for which Plaintiff was advocating. (Docket No. 33 at 1-2).  Moreover, the motion involved a single, straightforward legal issue—namely, the admissibility of evidence regarding the NYDOL lawsuit to establish notice, knowledge or wilfulness—points that Defendants had already conceded, and briefed with much more detail in their opening memorandum of law. (Docket No. 26 at 4); *see also Solar Spectrum LLC v. AEC Yield Cap. LLC*, 18-CV-7950 (GBD) (JLC), 2019 WL 5381798, at *9 (S.D.N.Y. Oct. 22, 2019) (finding reduction of hours spent on brief warranted where legal issues were not complicated and "only a modest amount of funds [we]re at stake").  Mr. Deans has over two decades of experience specializing in employment law at some of New York City's top law firms, (Docket No. 43 at 36 ¶¶ 4-6), and this background should have resulted in the expenditure of less time to respond to a simple issue. *See MPD Accessories, B.V. v. Urb. Outfitters, Inc.*, No. 12 Civ. 6501(LTS)(KNF), 2013 WL 5761421, at *8 (S.D.N.Y. Oct. 24, 2013), *objections overruled sub nom. MPD Accessories B.V. v. Urb. Outfitters*, 2013 WL 7211833 (S.D.N.Y. Dec. 17, 2013) (imposing reduction for six hours spent drafting five-page declaration, as well as 4.5 hours spent drafting eight-page opposition brief with only two pages of legal analysis); *cf. Blum v. Stenson*, 465 U.S. 886, 898 (1984) ("There may be cases . . . where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue.").

Nevertheless, in light of Plaintiff's overall success in this case and the reduction in counsel's hourly rate, only a "modest . . . reduction" is warranted for this inefficiency. *See*

*Bowman v. Receivables Performance Mgmt. LLC*, 20-CV-1779-LTS, 2022 WL 1321372, at *2
(S.D.N.Y. May 3, 2022) (imposing "only a modest further reduction" for, *inter alia*, expenditure
of five hours for drafting and filing reply brief in light of other reductions and plaintiff's position
as prevailing party); *see supra* Section II.B.1-2, *infra* Section II.B.4-6.  The brief set forth
Plaintiff's position without redundancy, and was responsive to Defendants' argument. *Cf. Tyo v.
Lakeshore Hockey Arena, Inc.*, No. 11-CV-6239-CJS-MWP, 2014 WL 2532447, at *4
(W.D.N.Y. June 5, 2014); *see Bowman*, 2022 WL 1321372, at *2.  Accordingly, the Court
rejects Defendants' request to deny fees entirely for this task.

**4.  Unreasonable Litigation Strategy**

Defendants additionally take issue with Plaintiff's litigation strategy, challenging
counsel's refusal to negotiate regarding the issues of notice and knowledge of the applicable
wage-and-hour laws, as well as Plaintiff's rate of pay. (Docket No. 45 at 8-9).  Specifically,
although Defendants offered to stipulate to such notice and knowledge in exchange for the
exclusion of evidence related to the NYDOL lawsuit, Plaintiff declined, choosing instead to
oppose the motion *in limine*, which the Court ultimately granted. (*Id.* at 5, 8).  Moreover, despite
Defendants' attempts to urge Plaintiff's counsel to reconsider their proposed method of
Plaintiff's pay rate, Plaintiff refused to do so, and the case did not settle. (*Id.* at 5, 9).  Defendants
allege that fees for the motion *in limine* and mediation should be denied because (a) counsel's
refusals to negotiate created needless litigation expenses to resolve these issues, on which
Defendants ultimately prevailed; and (b) counsel should have cancelled the mediation since they
knew they would not consider a different pay rate calculation. (*Id.* at 8-9).  Plaintiff responds that
counsel had no obligation to negotiate with Defendants and they were ethically required to
oppose Defendants' motion *in limine* as zealous advocates for their client. (Docket No. 46 at 4-
5).  Plaintiff's counsel further argues that they were not obligated to apprise Defendants of their

position regarding the pay rate in advance of the mediation, and Defendants are also to blame for going forward with that proceeding knowing that counsel had not changed their minds. (*Id.*).

It is well-settled that counsel may be denied compensation for "time spent pursuing claims or taking positions that were unreasonable." *See Vilkhu v. City of New York*, No. 06-CV-2095 (CPS)(JO), 2009 WL 1851019, at *13–14 (E.D.N.Y. June 26, 2009), *vacated and remanded on other grounds*, 372 F. App'x 222 (2d Cir. 2010); *see also Reiter v. Metro. Transp. Auth. of State of New York*, No. 01 Civ. 2762(GWG), 2007 WL 2775144, at *10 (S.D.N.Y. Sept. 25, 2007). However, "a court should not disallow fees for every motion that a prevailing party did not win. Reasonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments." *Rozell v. Ross–Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008).

The Court agrees with Defendants that some of Plaintiff's counsel's litigation decisions were unreasonable, specifically, counsel's insistence on litigating the motion *in limine* and advocating for a rate calculation which ultimately contradicted their client's testimony. With respect to the motion *in limine*, Defendants evidently anticipated that Plaintiff's counsel would want to introduce evidence of the NYDOL lawsuit in order to establish notice and knowledge, and thus, offered to stipulate to those issues to save both parties the expense and time for briefing. In addition, as the Court explained in its bench ruling granting the motion on February 1, 2022, Defendants' state of mind was not at issue in the case, and thus, evidence tending to prove their wilfulness, notice or knowledge of the law was irrelevant, and thus, inadmissible.[13]

---

[13] In its bench ruling, the Court set forth three reasons why Defendants' state of mind was not at issue: (1) the NYLL no longer requires proof of willfulness to obtain liquidated damages, *see Feuer v. Cornerstone Hotels Corporation*, 14-CV-5388 (JFB)(SIL), 2017 WL 3841841, at *12 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017); (2) Defendants waived any good faith defense by failing to assert one in their answer, *see Travellers International., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994); and (3) there was no need to determine wilfulness for statute of limitations purposes under the FLSA because the NYLL's six-year statute of limitations covered the entire span of alleged wage violations from 2018 to 2020, *see*

Nonetheless, Plaintiff's counsel rejected Defendants' proposed stipulation and opposed

Defendants' motion on the *sole* ground that they wished to use the subject evidence to establish

wilfulness, notice and knowledge—issues that the Court would not have permitted to be raised at

trial in the first place. (Docket No. 33 at 1).  In light of Defendants' offer to compromise on these

very issues, and the absence of authority supporting introduction of the evidence under the

circumstances, *see supra* n.13, this litigation position was unreasonable, and warrants further

reduction of Plaintiff's fees in connection with the motion *in limine*. *See, e.g.*, *Nat'l Ass'n for*

*Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, 17 Civ. 8943 (CS) (JCM), 2020

WL 7706783, at *9 & n.7 (S.D.N.Y. Dec. 29, 2020) (finding that reduction was warranted where

plaintiffs moved to compel production in lieu of accepting defendant's offer to produce

documents "under certain conditions" that the court found reasonable); *Viku*, 2009 WL 1851019,

at *14 (imposing reduction where plaintiff's positions with respect to motions *in limine*

"bordered at times on the frivolous" and were "a[n] . . . example of the generally overzealous

nature of th[e] litigation"); *see also Rozell*, 576 F. Supp. 2d at 538.  Putting aside counsel's

failure to realize that use of the evidence at trial was legally untenable, the Court will not shift

the full cost of opposing the motion onto Defendants when Plaintiff's counsel could have

achieved the same result they sought by simply accepting Defendants' proposed stipulation.

 The Court also agrees, to an extent, that Plaintiff's counsel took an unreasonable and

factually incorrect position regarding Plaintiff's rate of pay, which burdened the Court and most

likely needlessly prolonged the litigation. (Docket No. 45 at 9-10).  "Courts in this district . . .

reduce fees where attorneys appear to have submitted careless or inaccurate work on behalf of

their clients." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 129–30 (E.D.N.Y. 2013)

---

NYLL § 663(3); *Gamero v. Koodo Sushi Corporation*, 272 F. Supp. 3d 481, 498 n.7 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

(recommending 25% decrease "for the imprecise, confusing, and sometimes inaccurate papers submitted by plaintiff in th[e] action"); *see, e.g.*, *Gesualdi v. Stallone Testing Lab'ys, Inc.*, No. 10-CV-646 (ENV)(LB), 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) ("[C]alculation errors and poor drafting merit fee reductions by casting doubt on the accuracy of a party's submissions to the court and forcing the court to expend resources unnecessarily as a result."); *Trs. of the United Teamster Fund v. Mufflers, Inc.*, No. 07 CV 1425(SJ)(RML), 2008 WL 2114955, at *6 (E.D.N.Y. May 19, 2008) (reducing requested fees by 50% where plaintiff's filings "caused the court to expend its own time to conduct legal research and calculate interest rates and other figures accurately").

Plaintiff's rate of pay, and the appropriate calculation thereof, were key issues in the case,[14] and as detailed above, were heavily debated in advance of trial. According to Defendants, Plaintiff's counsel consistently insisted that their client was paid by the hour, so much so that the parties' failure to agree on this issue precluded fruitful settlement negotiations. (Docket No. 45 at 9). In advance of trial, the Court invited the parties to compromise or provide

---

[14] This is because, under the FLSA and NYLL, an employee is entitled to a 50% premium on top of "the regular rate at which the employee is actually employed" for any overtime hours worked. *See* 29 C.F.R. § 778.107; *see also* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Espinoza v. Broadway Pizza & Rest. Corp.*, No. 17-CV-7995 (RA) (KHP), 2021 WL 7903991, at *4 (S.D.N.Y. Nov. 18, 2021), *report and recommendation adopted*, 2022 WL 977068 (S.D.N.Y. Mar. 31, 2022) (noting that NYLL "mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime"). Thus, to calculate any unpaid overtime owed to Plaintiff, it was necessary to determine her "regular rate of pay." *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-05637 (CBA)(RER), 2015 WL 5475531, at *5 (E.D.N.Y. June 17, 2015), *report and recommendation adopted as modified*, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (internal quotations omitted). This rate is "'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003) (quoting *Walling v. Youngerman– Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). However, the method for calculating this rate differs if the employee was paid a flat sum every day, as opposed to being paid by the hour. *Compare* 29 C.F.R. § 778.110(a) ("If the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.'"), *with id.* § 778.112 ("If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked."); *see, e.g., Drozd v. U.S.A. Concepts of New York Corp.*, 09-CV-5120 (RER), 2015 WL 13733713, at *11 (E.D.N.Y. Apr. 23, 2015); *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA)(RER), 2015 WL 790060, at *7 (E.D.N.Y. Feb. 24, 2015).

authority regarding the appropriate rate calculation method numerous times—and even extended Plaintiff's deadline to file proposed jury instructions, which should have covered this issue—to no avail.[15]  Instead, Plaintiff's counsel continued to advocate for an hourly rate, to which the parties eventually stipulated, even though ultimately, at trial, Plaintiff testified that she was paid a day rate.[16]  This required the Court to spend its own time researching the rate of pay calculation based on an hourly rate before trial, only to revise its instructions on this issue overnight in order to ensure the charge was consistent with the trial testimony, and issue a further bench ruling explaining its authority to circumvent the parties' previous stipulation.  It is clear to the Court that Plaintiff's counsel's position was inconsistent with Plaintiff's testimony, and the proceedings would have been smoother if counsel had better command of these basic facts.  The Court also notes that counsel's failure to submit the required pretrial documents resulted in several additional court appearances and generally created more work on this case than the Court ordinarily would have expected.  These factors all militate in favor of additional reductions because no reasonable paying client would support such a waste of resources to clarify, litigate and finally resolve the rate of pay issue. *See Arbor Hill*, 522 F.3d at 190; *Gesualdi*, 2011 WL 2940606, at *1.

However, the Court will not *entirely* eliminate fees for the mediation simply because Plaintiff's counsel refused to negotiate the rate of pay issue, as Defendants request. (Docket No. 45 at 9-10).  While better preparation on counsel's part may have facilitated a resolution,

---

[15] Plaintiff's statement in the Joint Pretrial Order was unhelpful on this point, stating conclusorily that her "regular rate of pay was $16.25 per hour," followed by "$17.50 per hour" and "$18.75 per hour," without any legal citations supporting these calculations or the calculation of unpaid overtime. (Docket No. 36 at 3).

[16] Plaintiff is incorrect that the jury did not make a clear finding on this issue. (Docket No. 46 at 5-6).  To the contrary, the jury's response to Question 8 on their completed verdict form specifically indicates that consistent with Plaintiff's testimony, Plaintiff was paid a day rate as opposed to an hourly rate. (Docket No. 39 at 3).

Defendants are incorrect that they suggested a day rate in their Mediation Statement. (*Id*. at 9).

To the contrary, their Mediation Statement references 29 C.F.R. 778.114, (Docket No. 44-2 at 3),

which sets forth a rate of pay calculation not based on a day rate, but based on a fluctuating

workweek arrangement—an approach the Court rejected at the Final Pretrial Conference as

inconsistent with the facts of the case.[17]   Moreover, Defendants stipulated with Plaintiff's

counsel that Plaintiff was paid by the hour on February 10, 2022.   Thus, Defendants are also to

blame for some of the inefficiencies stemming from this issue.   Moreover, it was not

unreasonable for Plaintiff's counsel to decline to accept Defendants' proposed calculation

method at the mediation stage, since that method was also incorrect. *See Cabala v. Morris*, Civil

Action No. 3:09-cv-651 (VLB), 2012 WL 3656364, at *4 (D. Conn. Aug. 24, 2012), *aff'd sub*

*nom. Cabala v. Crowley*, 736 F.3d 226 (2d Cir. 2013) (declining to reduce fees where "the

parties had a legitimate dispute" precluding "settlement and therefore [p]laintiff's rejection of

[d]efendant's settlement offers was not unreasonable").   Defendants provide no evidence that

counsel otherwise failed to negotiate in good faith, or expended unnecessary hours preparing for

or conducting the mediation.   As Plaintiff's counsel emphasizes, Defendants "could have cut

short the negotiations at any point if [they] believed [counsel] was not negotiating in good faith

or that the negotiations were a waste of time." *See M.H. v. New York City Dep't of Edu.*, 20-cv-

1923 (LJL), 2021 WL 4804031, at *22 (S.D.N.Y. Oct. 13, 2021) (denying request to reduce fees

for improper negotiation tactics where both parties advanced incorrect positions as to a disputed

issue); (Docket No. 46 at 5).   Accordingly, Plaintiff's counsel's approach to mediation, while

---

[17] Indeed, a fluctuating workweek calculation for regular rate of pay requires that an employee's hours fluctuate week-to-week. *See* 29 C.F.R. 778.114(a)(1); *see also Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 317 (S.D.N.Y. 2021).   Here, it was undisputed that Plaintiff worked the same hours every day.

frustrating to Defendants, does not warrant a wholesale reduction of the fees connected thereto. *See Rozell*, 576 F. Supp. 2d at 538.

## 5. Vague Time Entries and Block Billing

The Court further notes that almost all of Mr. Lee's time entries, and some of PI's, are "block billed," *i.e.*, contain several unrelated tasks in a single entry. (*E.g.*, Docket No. 43 at 24-25, 28, 30, 32, 34). Block billing "is not prohibited in this Circuit," *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999), but this practice makes it "difficult for the court to evaluate whether the time spent on a given task was excessive where the attorney has grouped different tasks together in a single time entry." *See Alonso*, 2020 WL 9815184, at *25; *see also Bank v. Ho Seo*, No. 06 Civ. 15445(LTS)(RLE), 2009 WL 5341672, at *5 (S.D.N.Y. Dec. 16, 2009), *report and recommendation adopted as modified*, 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010).

In addition, the Court has identified twenty entries reflecting communications with the initials "YK," "YL" or "AC," without specifying the name or role of these individuals in the case. (*See* Docket No. 43 at 25-34). Plaintiff's papers do not explain whether these individuals are attorneys, support staff or others, and these individuals are not listed as timekeepers on the invoices.[18] Nor do the invoices' vague descriptions of these communications shed light on the individuals' roles. (*E.g.*, Docket No. 43 at 29, 33) ("Email from YK re: discovery;" "Email from AC re: status conference;" "Email to/from YK re: conference statement;" "Email from YL re: motion in limine"). Therefore, the purpose of these communications is unclear. "While

---

[18] Indeed, counsel's declaration only identifies Mr. Lee, Mr. Deans and PI as the individuals who worked on the case, without mentioning these additional initials. (Docket No. 43 at 36-37 ¶¶ 2-9). The Court is also unable to determine whether these additional initials reference attorneys based on the docket sheet, as only Mr. Deans and Mr. Lee entered appearances for Plaintiff. *Cf. Cabrera v. New York Fresh Meat Inc.*, 15 Civ. 1325 (GBD) (SDA), 2018 WL 2192187, at *3 (S.D.N.Y. May 14, 2018). Furthermore, the initials do not match Plaintiff's initials either.

shorthand in time entries is permissible," absent a more detailed explanation of the nature of

these communications, this pattern "is outside the bounds of permissible entries for which a

reasonable client would be willing to pay because of the confusion it causes." *See In re*

*Doria/Memon Disc. Stores Wage & Hour Litig.*, 14-cv-7990 (RWS), 2016 WL 3963170, at *3

(S.D.N.Y. July 22, 2016) (finding that records reflecting "[c]alls with [unspecified individuals']

initials about retaliation" were "not sufficiently specific to warrant compensation").  This

shorthand also frustrates the Court's evaluation of the reasonableness of time spent on many of

the entries. *See Alonso*, 2020 WL 9815184, at *25 ("Where attorney time records are inadequate

to allow for judicial review, it is appropriate for the court to reduce the hours stated.") (citing

*Hensley*, 461 U.S. at 433); *cf. Elisama v. Ghzali Gourmet Deli Inc.*, 14cv8333 (PGG) (DF), 2016

WL 11523365, at *17 (S.D.N.Y. Nov. 7, 2016), *report and recommendation adopted*, 2018 WL

4908106 (S.D.N.Y. Oct. 10, 2018) (noting that "it would be within the Court's discretion to

decline to award any attorneys' fees in this case" in light of, *inter alia*, plaintiff's failure to

"provide a key to inform th[e] Court as to which timekeeper initials correspond to which

timekeepers").  Such "block billing combined with vague descriptions in the sparest of terms, . . .

can justify the deduction of a reasonable percentage of the number of hours claimed as a

practical means of trimming fat from a fee application." *Sid Bernstein Presents, LLC v. Apple*

*Corps Ltd.*, 16 Civ. 7084 (GBD) (KNF), 2018 WL 1587125, at *6 (S.D.N.Y. Mar. 29, 2018)

(quoting *TufAmerica Inc. v. Diamond*, 12-CV-3529 (AJN), 2016 WL 1029553, at *4 (S.D.N.Y.

Mar. 9, 2016), *on reconsideration in part*, No. 12-CV-3529 (AJN), 2018 WL 401510 (S.D.N.Y.

Jan. 12, 2018)) (internal quotations omitted); *see, e.g.*, *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149,

172 (2d Cir. 1998) (affirming reduction due to "vague or otherwise inconsistent" entries

including "attorney[] time submissions . . . document[ing] conferences with other attorneys, even

though such conferences do not appear on the other attorneys' time sheets"); *Bond v. Welpak Corp.*, 15-CV-2403 (JBW) (SMG), 2017 WL 4325819, at *8 (E.D.N.Y. Sept. 26, 2017) (reducing fees in light of "occasional block billing" and vague invoices). Consequently, these factors warrant a reduction in fees as well.

### 6. Fee Calculation

"In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048(GEL), 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)). This "ensure[s] that the shifted fees represent only work that was necessary to the litigation and a cost efficient use of . . . counsel." *Simmonds v. N.Y. City Dep't of Corr.*, No. 06 Civ. 5298(NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) (quoting *Sullivan v. Syracuse Hous. Auth.*, No. 89-CV-1205, 1993 WL 147457, at *3 (S.D.N.Y. May 3, 1993)) (internal quotations omitted). In addition to the types of inefficiencies and unreasonable litigation tactics cited above, "[t]he Court can consider the degree of success obtained in deciding what is . . . reasonable." *See Zhao Hui Chen v. Jin Holding Grp. Inc.*, No. 10 Civ. 0414(PAC), 2012 WL 279719, at *4 (S.D.N.Y. Jan. 31, 2012); *see, e.g.*, *Monette v. Cnty. of Nassau*, No. 11-CV-539 (JFB) (AKT), 2016 WL 4145798, at *7 (E.D.N.Y. Aug. 4, 2016); *Vilkhu*, 2009 WL 1851019, at *10–15. The reduction can range from 5 or 10% at the "lower end" for a limited amount of improper billing practices, *see, e.g.*, *Meide Zhang v. Liang Zhang*, CIVIL ACTION NO. 16 Civ. 4013 (LGS) (SLC), 2020 WL 9256464, at *8 (S.D.N.Y. Dec. 21, 2020), *report and recommendation adopted as modified sub nom. Zhang v. Zhang*, 2021 WL 1154084 (S.D.N.Y. Mar. 26, 2021) (10% reduction in light of three hours of excessive internal conferences but otherwise reasonable task and time allocations); *Kalloo v.*

*Unlimited Mechanical Co. of NY*, 977 F. Supp. 2d 209, 213 (E.D.N.Y. 2013) (5% reduction for

"modest number of" "duplicative" or vague time entries), to 50% for egregious litigation conduct

or excessive inefficiencies, *see, e.g.*, *Agudelo v. E & D LLC*, No. 12 CV 960(HB), 2013 WL

1401887, at *3 (S.D.N.Y. Apr. 4, 2013) (50% reduction for improper staffing, excessive hours,

and billing for noncompensable tasks); *Gesualdi*, 2011 WL 2940606, at *1 (50% reduction due

to poor drafting in multiple filings, mistakes and failure to follow Federal Rules of Civil

Procedure and Local Rules).

Here, although the original Complaint sought $68,535.64 in damages, (Docket No. 1 ¶¶

55, 69, 77, 83), the jury's findings resulted in a damages calculation of only $24,758.66, 36% of

that amount, (Docket Nos. 40-41).  Thus, Plaintiff's counsel overvalued the case principally

because they did not properly calculate Plaintiff's rate of pay based on her own testimony.

"[H]ours expended in pursuit of an inflated goal are not reasonable and should not be

compensated, lest they produce an unfair windfall for counsel." *See Ibarra v. HSCS Corp.*, No.

10 Civ. 5109 KBF, 2012 WL 3964735, at *4 (S.D.N.Y. Sept. 10, 2012) (quoting *Chen*, 2012 WL

279719, at *3–4) (internal quotations omitted).  Moreover, as a straightforward wage-and-hour

action with one Plaintiff, and only the unpaid overtime issue to present to the jury, *see supra*

Section I, this case should not have been difficult for counsel to prepare for trial in light of Mr.

Deans' background and purported knowledge of wage-and-hour laws. *See Ibarra*, 2012 WL

3964735, at *4.  Nonetheless, as discussed, Plaintiff's counsel created unnecessary work for

everyone involved in the weeks before trial by submitting substandard materials or no materials

at all, failing to comply with pretrial deadlines, and taking untenable or unreasonable positions

that were ultimately rejected by the Court and the jury. *See supra* Section II.B.4.  Furthermore,

counsel engaged in poor billing practices, including duplicative staffing, overbilling, billing for

administrative tasks, and a limited amount of block billing and vague time entries. *See supra* Section II.B.1-3, 5.

The Court is mindful that the aggregate number of hours associated with these billing practices is limited.  The Court also notes that counsel expended only 106.9 hours on the case overall—which is well-within the range that courts have considered reasonable in similar wage-and-hour actions. *See, e.g.*, *Jimenez v. KLB Foods, Inc.*, No. 12-CV-6796 (JPO), 2015 WL 3947273, at *3 (S.D.N.Y. June 29, 2015) (finding 155.6 hours reasonable in "straightforward wage and hour action that involved a small number of depositions, relatively minor motion practice, and a brief trial"); *Chen*, 2012 WL 279719, at *4 (reducing 309.7 hours to 186 hours in single-plaintiff wage-and-hour case with limited discovery that went to trial).

However, the totality of the circumstances warrant a 15% reduction to prevent a windfall to counsel and to account for the inefficiencies noted. *See, e.g.*, *Bisono*, 2019 WL 4733599, at *4 (reducing time charged by 15% due to block billing, excessive hours, vagueness, and charges for administrative tasks); *Luongo v. 44-37 Rest. Corp.*, No. 13 CV 7420 (CBA)(RML), 2017 WL 8813128, at *3 (E.D.N.Y. Dec. 19, 2017), *report and recommendation adopted as modified*, 2018 WL 1115697 (E.D.N.Y. Feb. 28, 2018) (reducing hours by 20% "due to some redundancies and ambiguities in the time entries"); *Cabrera v. Schafer*, CV126323 (ADS) (AKT), 2017 WL 9512409, at *14 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017) (imposing 30% reduction "where numerous deficiencies . . . including vague entries, block billing, excessive billing, . . . and not reducing the hourly rate for travel time . . . pervade[d] the fee application"); *Siegel*, 2016 WL 1211849, at *13 (imposing 15% reduction where "records reveal[ed] that some redundant or unnecessary work was performed . . . , [but] . . . d[id] not support [prevailing party]'s assertion that [litigant] engaged in

a calculated strategy to drum up excessive attorneys' fees during every stage of the case"); *Chen*,

2012 WL 279719, at \*4 (assigning 40% reduction in light of "almost *de minimis* recovery of

$4,665.98" in damages compared to approximately $70,000.00 sought); *Vilku*, 2009 WL

1851019, at \*14 (imposing 5% reduction for "unreasonable or untimely behavior" by attorneys

"whose time account[ed] for the vast majority of the work performed").

  After incorporating the reductions of hourly rates and hours worked, Plaintiff's counsel is

entitled to a lodestar amount of $29,680.50 in attorneys' fees, as set forth in the following table:

| Timekeeper | Rate | Hours | Fee |
|---|---|---|---|
| Errol C. Deans | $350.00 | 62.73 | $21,955.50 |
| Joshua S. Lee | $300.00 | 24.56 | $7,368.00 |
| PI | $100.00 | 3.57 | $357.00 |
| **TOTAL** | | | **$29,680.50** |

## C. Cap Based on Contingency Arrangement

  Defendants urge the Court to cap the fee award at 33% of the damages awarded at trial,

which amounts to $8,170.36, in light of the contingency clause in Plaintiff's retainer agreement.

(Docket No. 45 at 10-14). Defendants rely on the Supreme Court's decisions in *Hensley v.

Eckerhart*, 461 U.S. 424, 434–36 (1983), and *Blanchard v. Bergeron*, 489 U.S. 87, 92–93

(1989), for the proposition that because the most important factor in rendering a reasonable

award is the results obtained, a plaintiff's contractual fee based on a percentage of her recovery

may be useful in establishing "the attorney's fee expectations when he accepted the case" and the

reasonableness of the award. (Docket No. 45 at 12) (quoting *Blanchard*, 489 U.S. at 93). Further

relying on *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470 (S.D.N.Y. 2009),

Defendants argue that the award should be capped because Plaintiff chose to litigate the rate

issue rather than settling, and the case did not involve novel legal issues or a "tenacious defense" that may have "expand[ed] the time required to pursue" Plaintiff's otherwise "straightforward claims." *See* 657 F. Supp. 2d at 478; (Docket No. 45 at 13).

However, as the Supreme Court recognized in *Blanchard*, a contingency fee arrangement cannot act "as a ceiling on otherwise reasonable attorney[s'] fees in FLSA" cases. *See Lora v. J. V. Car Wash, LTC.*, No. 11 Civ. 9010 (LLS)(AJP), 2015 WL 4496847, at *6 n.9 (S.D.N.Y. July 24, 2015), *report and recommendation adopted sub nom. Lora v. J.V. Car Wash*, Ltd., 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) (citing *Blanchard*, 489 U.S. at 93).  Moreover, although *Blanchard* permits courts to consider contingency arrangements when assessing reasonableness, the Court must also be "mindful that" a fee award based on such a clause "would do little to encourage attorneys to litigate FLSA claims, where the wage and hour amounts owed are often individually too small to warrant significant recovery." *See Velasquez v. Digital Page, Inc.*, 124 F. Supp. 3d 201, 205 (E.D.N.Y. 2015); *see also Gonzalez*, 112 F. Supp. 3d at 10–11 (collecting cases).  Indeed, "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986).

In light of these policy considerations, as well as the significant reductions imposed for many of the other reasons Defendants cite, *see supra* Section II.B, the Court declines to make any additional adjustments. *See Velasquez*, 124 F. Supp. 3d at 205 (rejecting proposal to decrease fee award to match contingency arrangement); *Kahlil*, 657 F. Supp. at 478 (finding further adjustment solely based on low amount of recovery unwarranted in light of 15% reduction already "imposed" on "plaintiffs' recoverable hours").

**D.  Costs**

Plaintiff's counsel further seeks $1,957.40 in costs expended for, *inter alia*, postage, copying, service and filing fees, and deposition fees. (Docket No. 43 at 13-14, 34-35).  Plaintiff "is entitled to 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Polit v. Glob. Foods Int'l Corp.*, 14-CV-07360 (SN), 2017 WL 1373907, at *9 (S.D.N.Y. Apr. 13, 2017) (quoting *LeBlanc-Sternberg*, 143 F.3d at 763).  Upon review, the costs sought by Plaintiff are reasonable.  Therefore, Plaintiff is entitled to $1,957.40 for costs incurred in the instant matter.

**III.  CONCLUSION**

For the foregoing reasons, Plaintiff's motion is granted in part and denied in part, and Plaintiff's counsel is awarded $29,680.50 in attorneys' fees, and $1,957.40 in costs.  The Clerk is respectfully requested to terminate the pending motion (Docket No. 43).

Dated:    August 24, 2022
          White Plains, New York

                          **SO ORDERED:**

                          JUDITH C. McCARTHY
                          United States Magistrate Judge